## Committee on Judicial Ethics
## Informal Opinion 83-1

KREMER, *Chairman,* June 7, 1983—Our committee has been asked for an opinion upon the following inquiry.

During a political campaign in which two judges were "running" for a vacant seat on the Supreme Court of Pennsylvania an attorney wrote the following letter to the editor and caused it to be published:

"This past summer, a law firm was asked to give a legal opinion to a large insurance company projecting its best judgment on how the Pennsylvania Supreme Court would decide a group of cases involving the Pennsylvania No-Fault Act, which are in or on their way to that court. Adverse decisions on these issues could cost the company and policyholders more than $30 million.

"After careful review of a host of opinions by members of the Supreme Court, the law firm concluded that the issue was too close to call without knowing the outcome of the coming election.

"The conclusion was that, if Judge

_____, a _____ County Judge, were the winner, there would be a good chance that the issue would be decided against the plaintiffs and in favor of the insurance company.

"If Judge _____ _____, from _____ County, were to win, it would seem a certainty that he, whose candidacy actively is supported by the Pennsylvania Trial Lawyers Association, would vote against upholding the clear and logical wording of the No-Fault Act and decide in favor of the plaintiffs."

The letter states, in an accusatory vein, that one of the candidates "would vote against upholding the clear and logical wording of the No-fault Act and decide in favor of the plaintiffs." It indicates that the other candidate would vote "against the plaintiffs."

May a candidate, in such circumstances, respond, comment or publicize his personal views or positions on such legal questions? May he repudiate or confirm the statements made? What, if anything, can he properly say or do?

Both the Code of Judicial Conduct as adopted by the Supreme Court of Pennsylvania (Canon 7B(1) ) and the Code of the American Bar Association (Canon 7B(1)) from which it is derived, provide that:

"A candidate

• • •

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; . . . "
See A.B.A. Comittee on Ethics and Professional Responsibility, Informal Opinion 1444 (February 27, 1980).

The earlier Canon provided: "A candidate for judicial position . . . should not announce in advance his conclusions of law on disputed issues . . . "

The Judiciary Inquiry and Review Board in August, 1977, promulgated Guidelines to Ethical Conduct In Judicial Campaigns.

Guideline (2) stated:

"He may.pledge the faithful and proper performance of his duties, but should make no other promises of conduct in office. He should not state his views on disputed legal or political issues . . . A Judge must approach each case before him with an open mind and decide it on the basis of the evidence, the law and precedent. Thus, a candidate should not indicate what his decision would be should a particular case or type of case come before him, or what sentence he would pass on a defendant charged with a particular crime."

In Addendum No. 2 to the guidelines the board stated with regard to "Campaign Conduct and Subject Matter for Campaign Literature" that

"It is our opinion, speaking generally, that a candidate may not give his views on disputed legal or political issues where it is conceivable that a case involving such issues may come before him for determination."

The addendum guidelines, in Section H, also enjoin that individual cases should not be the subject of campaign material.

All members of the committee recognize that the letter writer improperly placed the judicial candidates in a dilemma. They cannot affirm or deny any positions to be taken on a pending case or cases. They cannot confirm or repudiate the accuracy or inaccuracy of the statements made except that a

misquotation could be repudiated. They cannot say anything which would indicate a pre-judgment, prior to hearing arguments and reviewing a record.

A limited variety of possible cautious and limited response has been suggested.

The candidate could deny that he has any predisposition and he could point out that he will study and review the case or cases at the proper time. He may affirm that he will hear both sides impartially.

The candidate may point out and comment that he is unable to respond to such predictions because of the rules governing judicial conduct and judicial campaigns. He may quote the canons of judicial conduct. He may also point out that the attorney in such circumstances, seems to have been guilty of unethical conduct by commenting on pending matters and by trying to or appearing to try to influence conduct in a particular case. He may also comment that an attorney who impels or seeks to impel a candidate to violate the rules of judicial conduct, is acting in violation of the Code of Professional Responsibility.

The overall guiding principle, however, is that a judge (or judge-candidate) should not permit himself, directly or indirectly, to be baited into a [partisan] response which in any way reflects his positions or probable vote in such situation.

It is not part of our task to evaluate the propriety or desireability of code provisions; however, we do note that there is some cogent thought amongst the committee members that judicial First Amendment rights and rights of fair expression and response may be too restricted under the canons. We must also note that Mr. Chief Justice Roberts in his May 4, 1983 "State of the Judiciary" address stated as follows:

"The absolutely vital requirement that the

judiciary be independent and unbiased is, of course, also the foundation of that section of the Code of Judicial Conduct which states that a judge—or a candidate for judicial office—should not announce his views on disputed legal or political issues. Some have argued that this important precept, already too often ignored, infringes upon a judge's First Amendment right to freedom of expression. I suggest to you that such an argument completely misses the point. The question is not whether a judge—or one who aspires to be a judge—has the constitutional right to say anything he or she wishes to say. Rather, the question is whether our system of fair and equal justice can have any meaning at all when those who are bound to render their decisions impartially have announced their decisions—even within their own minds—before they have heard the argument of counsel and fairly considered the facts of the case.

Such impulsive, before-the-fact decision-making has no place in any system that honestly aspires to the ideal of justice. And if the entire Code of Judicial Conduct were to disappear tomorrow, I would hope that all the judges of this Commonwealth would continue to abide by it as faithfully as if it were etched in stone."

The committee, without dissent, has expressed serious indignation and dismay as to the conduct of the attorney who placed the judge-candidates in a situation-dilemma, in which they could not possibly fully and properly respond to the matters stated in the letter.

Also presiding: Hon. J.E. Backenstoe, Hon. J.P. Braig, Hon. R.A. Gardner, Hon. R.D. Grifo, Hon. N.A. Jenkins, Hon. E. Ross, Hon. J.E. Rowley, Hon. L.D. Stefan, Hon. L.E. Wood.